Good morning. I'm Mark Vanderhoof, appearing on behalf of Petitioner Alfonso Arreola, who is present in court today with his family, and Stacey Tolchin is my co-counsel. I'll reserve five minutes for rebuttal. This case involves whether Mr. Arreola, who has lived in this country as a permanent resident since the age of one, can be permanently removed for driving under the influence conviction based on a 1998 removal order that could not be issued today. Well, it's driving under the influence with three prior convictions. That's correct. But it's not a deportable offense today. I understand. I want to first address the issue raised in the 28-J letter submitted Tuesday, and I do want to apologize to the Court for the lateness of that submission. We'd be happy to brief that further afterwards if the Court so desires. The essence of what the Sixth Circuit held in Tilly, relying on the Seventh Circuit's decision in Medellin-Reyes, is that even in a case of our illegal reentry after removal in the reinstatement context, the underlying removal order, the underlying removal order that was challenged via a habeas in the district court as part of the challenge to the reinstatement order, which was pending in May 2005 when Real ID Act was passed, is transferred back to the circuit court under Section 106C and is now reviewed as a routine petition for review. So what do you want to do, review and attack the underlying removal order? Review the direct appeal of the underlying removal order. The underlying removal order is what you're real – that's what you want to attack. Under Trinidad Aquino, it would not be reviewed. And you think it's defective? Well, under 106C, we don't think we have to reach that. The government thinks we have to reach the manner in which it goes to miscarriage of justice. We all agree, as the government points out in footnote 6 on page 17, that 106C does confer jurisdiction on the court. But the question is whether or not it's just a direct review, like a direct review under Trinidad Aquino controls, or whether you have to show a gross miscarriage of justice. But at the end of the day, don't you have to show some defect in the underlying removal order? Not under the unique circumstance of this case, and I'll explain why. And the Tilly Court held that. And the reasoning is that because of the – of the language in 106C that transferred the case back to the court of appeals, and because of what this panel did in 2004, the direct challenge to the 1998 order is before you. In 2004, we had two challenges, one on the reinstatement and saying under – under 1231A5, you can't – you can't deport the person because of the defect. The panel said, uh-uh, there's no review. However, due process requires a review of the 1998 proceeding. So it can't do that. Can't Morales Esquerdo hold that due process is not violated by reinstating a prior removal, regardless of the process afforded in the prior removal? Yes, it did, Your Honor. But as this Court held in de Rincón, subsequent to Morales Esquerdo, the de Rincón Court pointed out that Morales Esquerdo had not considered 1252A2D. And under that, this Court has now said that you can consider the challenge to the reinstatement order, the underlying order, if you can show a gross miscarriage of justice. Well, you know, maybe I'm confused. I keep – my mind keeps going back to the validity or the invalidity of the underlying removal order. Correct. You say there's some defect in that, and everything flows from the defect in that, eventually, in my way of – to my way of thinking. Well, that is true if you reject our argument that under Tilly in the Sixth Circuit and Medellín in the Seventh Circuit, that you just review the – directly the 1998 order, because of the way this case occurred. The panel transferred – But the order's valid. There's no problem with what happened to your client. There's two things, Your Honor. One is that because the 1998 order was transferred by habeas – or transferred this Court on habeas to the district court, and because it was pending on – in May 2005, it got transferred back here under – I understand that. Okay. And so that's a direct review under the Sixth Circuit's reasoning. Under the Seventh Circuit's, it's direct review. And all you do is say, is drunk driving with priors a deportable offense? No. The government disagrees and says, yes, you review it, but we have to show the gross miscarriage of justice. We don't think we do, but we think we can show the gross miscarriage of justice. What's the gross miscarriage of justice? That is that the attorney gave completely wrong advice at the time. You know, I have a hard time buying that, and I guess that's what I'm driving at. Okay. If you take a look at the record, and I'm sure you're completely familiar with it. Pretty familiar. The IG said, you know, the lawyer said, doesn't want to appeal, and then the IG entered into a lengthy colloquy with your client. He did. That seems to be – it was almost an overkill in terms of advising your client what was at issue, what was available, and almost telling him appeal. I mean, that's the way it comes across. And finally, your client fully, knowledgeably, with time, says in writing, I don't want to appeal. And I find an awfully hard time finding anything defective with that at all. There was nothing defective with what the immigration judge did. The problem is what happened afterwards when his attorney said, wait a minute, there's no way whatsoever you can appeal and get review in this court, in the court of appeals. And that was the error. And the – under this court's decisions in Ray v. Gonzalez and Castro-Orion and Inter you have the right to rely on counsel. You can rely on counsel because counsel has to interpret this complicated immigration law. So what happens is the judge says, look, you better appeal if you want to preserve your rights. You know, at the time – at the time counsel gave the advice about which you now complain, that advice was correct. Well, this court had held in Magana and previously in Beltran-Leon that there was review. There was jurisdiction to consider the jurisdiction. It is brief, Ariel. Well, in your brief you can see that it was true at the time, but a recent decision held that driving under the influence was in – was in Magana's case. But, I mean, I just don't see when you strip away all the procedural stuff what the defect was in the underlying removal order. It may not – it seems to me that your client knowledgeably waived any right to appeal. Well, with all due respect to you, Your Honor, I would agree with you if everything stopped at the time of the deportation hearing in court. Excuse me. He goes outside. He talks to his lawyer. But what – The lawyer then says, forget it. There's no review possible. Magallanes controls and you cannot get any Federal court review whatsoever. That was dead wrong under Magana and Beltran-Leon. But Federal court review of what issue? Of the – whether driving under the influence of buyers was an aggravated felony. Which it was at that time. Under Magallanes it was. That's right. And the immigration judge says, but wait a minute. You might want to appeal because maybe this will get overturned. And I agree with you, Judge Schwartz. That's exactly what the judge says. But then his lawyer says, forget it, because you cannot get into Federal court. And that was the gross miscarriage of justice. He was deprived of his right to appeal by the ineffective assistant counsel. That doesn't even sound to me like prong one of Strickland, ineffective assistant of counsel. Well, I think it is because both Beltran-Leon – That happened to be the law at the time. It was an opinion by the attorney. I mean, the judge says on the one hand, you might be able to appeal and turn Magallanes around. And the attorney says, I don't think that's going to happen. That's gross miscarriage of justice? Yes, Your Honor, because he says you cannot go higher than the Board of Immigration Appeals. You cannot get into Federal court. But obviously you could. Beltran-Leon previously had said you get to go to court. The court determines jurisdiction, has jurisdiction, determines its jurisdiction. Where's your client now? He's right here in court, Your Honor. He's been here since the age of one. He had a drunk driving with priors. That's not a deportable offense today. And yet the government says he's permanently barred. And he has no means of ever immigrating to the country again. He cannot be immoral. He said, well, no big harm. He can come back in from abroad. That is not true under the facts of his case. His only remedy is if this is declared, as Trinidad Aquino said years ago, it's not a deportable offense. Why can't he apply for entry from Mexico? He has other convictions which would render him inadmissible to re-immigrate, but they're not deportable. What are the other convictions? He has a drug possession. Now, it doesn't render him removable from the United States, but it would render him inadmissible to come back in. So that's the reason that this is crucial to him, an individual who, since the age of one, cannot come back if he's deported. And we think the law supports the fact that he should not be deported at this time. And I'd like to actually reserve the rest of my time, if I can. Thank you. Good morning, Your Honors. May it please the Court, Papu Sandu on behalf of the Attorney General. Your Honors, taking the arguments as opposing counsel made them, first of all, there is no support outside of the lone, unpublished Sixth Circuit decision that was 28A to this Court for the argument that the Petitioner makes that somehow that this Court should now treat the challenge as a direct review challenge instead of a collateral attack. It's clearly a collateral attack. The Petitioner was deported. He came into the country illegally. And under Morales-Izquierdo, we would say that there is no jurisdiction. I would take – I would contest the Petitioner's counsel's representation that we would say that there is jurisdiction for gross miscarriage of justice. Our brief clearly sets forth the argument that Morales-Izquierdo controls this case. It's right on. What Morales-Izquierdo said was once an alien is deported from the United States, the alien should not take the law into their own hands and illegally reenter the country and therefore derive a benefit by gaining access to the courts. What you're saying is that, in effect, Ariel is priva-removable contrary to the law. But was it in the context of the laws that existed at the time of the removal, which is the opposite position of the appellant? Is that correct? Yes. And this Court has already decided that question. In – as to this Petitioner, in Areola, Areola, the prior case that is at 383 F. 3956, a panel of this Court found that there was nothing wrong with the underlying order in terms of the DUI charge, because it was proper at the time that Petitioner was ordered deported and was deported. And several circuits, and this circuit in Alvarenga, reached the same result. So that question is not before this Court. The validity of the DUI act, though, is not before this Court. What's before this Court is the ineffective assistance claim. And we would take the position that that is not subject to review because due process is not implicated, see Morales' Fierdo. The case seems to be on point. I'll read you the clear language of that decision. Reinstatement of a prior removal order, regardless of the process afforded in the underlying order, does not offend due process because reinstatement of a prior order does not change the alien's rights or remedies. The Court engages in a fairly detailed discussion citing the Supreme Court's decision in Fernandez-Vargas to support its reasoning. And we would contend that Morales' reasoning is based on a very strong policy purpose. What the Court is saying, again, is that aliens who are deported should not resort to the self-help remedy. And indeed, the Petitioner had opportunities to challenge his order from abroad, but failed to do so. So. Challenge his order from abroad on what ground? So, for example, once he was deported, when he was deported in 1998. Right. There was law in this circuit, and we sent a letter under 28J setting that forth, that the Petitioner could file a motion to reopen it from abroad under this Court's decision in Wietersburg, and could raise any claim of a due process violation under the law at that time. This Court said that it could consider whether or not. All right.  But the offenses, or the offense for which he was removed from the country was what? The offense for which he was removed was the DUI conviction. At that time, it was considered to be an aggravated felony. And when did it cease to be an aggravated felony? Subsequently, this circuit found, and then the Supreme Court, that it wasn't. I believe that was in 2001. This circuit's decisions were in 2001. And so he was already out of the country, or should have been out of the country at that time? He was out of the country in 1998. And so you're saying that what he should have done at that time, being out of the country, after the underlying offense was deemed no longer to be an aggravated felony, was make a motion to reopen, claiming that the offense for which he was deported wasn't the deportable offense? Well, that would have been one avenue he would have. That would have been cognizable in court. He could have done that. Well, it would have been under this Court's precedent in Wietersburg, he could have filed a motion to reopen. With the BIA or with us? With the BIA. I'm sorry. Right, with the BIA. With the BIA, under the Wietersburg decision that we sent a 20-page letter. And claimed that the law has changed. Well, at that point, the law had not changed. So it was three years later. So he would have had to have, if the law had changed, if the law had, the law didn't change for three years. But let's assume he's still out of the country. It's three years later. He picks up the advance sheets and says, oh, my gosh, law's changed. Then what could he do? Then he could try to file a motion to reopen. He could try to file or he could? Well, he could file a motion to reopen. The Board could say you're out of time because there's a 90-day time period. But he could make his arguments to the Board, and the Board has sua sponte authority to reopen the case. Now, if the Board said you're out of time, you're out of luck, he could have at least then filed a petition for review to this Court. In other words, under Wietersburg. Claiming what? Claiming that there's been a change in the law and that he could make his argument that that change should apply to him. Because that's, that's. Are there any cases that we have on the books where somebody did something like that and it turned out to be cognizable in front of the BIA and in front of us? There are cases in which, like the Wietersburg case, in which the conviction was at post-deportation. The conviction was vacated by the criminal sentencing court. And the petitioner brought a motion to reopen. Now, that was within the time limit, I believe, in the Wietersburg case. And the BIA said, sorry, you've been deported. We can't consider the motion to reopen. This Court said, no, we can consider the motion to reopen to the extent to determine whether it was, quote, legally executed and granted relief in the Wietersburg case in that instance. Now. Granted relief, meaning the BIA was ordered to hear it? It overturned the deportation order. Overturned the deportation order. So you're suggesting something along those lines should have been done by the petitioner in this case? Yes. Now, in all fairness, he was – three years later would have been out of the 90-day motion to reopen. I understand that. But I'm saying that what goes to the heart of Morales is that he should not have taken the law into his own hands and illegally – and committed another immigration – and a criminal violation, but should have, in fact, tried to assert his remedies from abroad. And there would have been no reason for him to enter, you know, I think it was the same day or soon thereafter, because he was lawfully deported. At that point, the Board precedent was such that this was considered to be an aggravated felony. And so we would argue that there is no grisly miscarriage of justice, even if the Court were to go there because he was supposed to seek his remedies from abroad. Now, we would also say that if the Court looked at the claim of ineffective assistance, you know, it's clear from the transcript that the petitioner did not want to appeal. He didn't want to appeal because to appeal, since he wasn't going to be allowed to bond, he was going to spend time in jail until his appeal was – That's right. He was clearly – He had been in jail for, I think, 29 months in custody. He was not happy with that. He – his counsel at that time indicated on the record that he didn't want to appeal. The judge then went – launched into elaborate, detailed discussion of his rights, saying that this is, if not a momentous time in his life, this is a very significant time, very important decision that he's going to make, informed him essentially as well that you have a right to ask that court, the board, to review any – my decision to see if my decision is correct. This is part of the process. These are how laws are changed. AR-301, AR-302-03. If you do not appeal and you have given up your right to appeal, a change in the law or a change in the case law may not affect you as it might affect someone who is on appeal. He repeatedly asked the judge for bond. The bond – the judge says, I'm not going to give you bond given your criminal history. Then the judge said, look, this is really an important decision. Take ten minutes and talk this over with your attorney. It's only after he talked to his attorney and his family that then his former counsel indicated that they would reserve appeal. So I think the record actually indicates that his former counsel may have played a role in having him preserve the appeal. At least that's what the record indicates. So there's just no gross miscarriage of justice here. The state of the law was at flux. So the jurisdictional bar that was in existence is the permanent rule bar, the criminal alien bar, which he would have been subject to, 8 U.S.C. 1252a2c. That bar said, quote, notwithstanding any other provision of law, basically there's – unquote, basically there's no jurisdiction in any court for someone who's been charged with a criminal offense under that statute, which included aggravated felonies. So this is the state of the law. That provision – I think my brother counsel mentions Magana. That provision was not in Magana. That was not what was at stake in Magana. And Magana did not find that there's jurisdiction in the court of appeals. Magana found that there may be jurisdiction for legal challenges in the district court. That was only one month before this decision. So the state of the law was in flux. The issue was not resolved until three or four years later in St. Cyr when the Supreme Court held that there was habeas review over legal challenges to deportation orders, even for criminal aliens. And there were four judges who dissented and said, we don't think there's review anywhere. So to say that that was a gross miscarriage of justice, and I would – I would quote Petitioner's own brief from the last round of briefing for this Court, which was in 2001. The Petitioner's counsel said in his brief, At the time of Petitioner's removal order, the new statutory bars to jurisdiction were in effect. The bar to review for those convicted of criminal offenses appeared to preclude all judicial review for these – for those convicted of certain crimes, including aggravated felonies. That was the argument that Petitioner's counsel made almost ten years ago. And I don't see how we can fault former counsel for telling his client that not only are you bound by the board's determination, so if you appeal, you're going to lose, but that there's a real – there's a real problem here with jurisdiction as well in the Federal courts. So we would argue that there is no ineffective – no ineffective assistance of counsel, no gross miscarriage of justice. But we would – we would ask the Court to consider the government's argument that Morales y Esquerro shuts the door. And we would – we would argue that – that the subsequent decisions that the Petitioner's counsel cite in Marino and Rincón do not contravene Morales y Esquerro, which was a non-bond decision. So the Marino case actually supports the Morales' – Morales' analysis. It applies Morales and says that Morales cuts the feet of the Petitioner's claim, quote, cuts the feet out of the Petitioner's claim of the collateral attack in that case. Let me just read to you what it says. In that case, there was a due process issue alleged as well. It was a notice issue. In that case, the alien argued that he didn't even understand the documents because they were not in his language. The Court says, if he could prove that he was not advised of his rights because he understood neither English nor Spanish, how would such proof advance his case? Morales y Esquerro holds that he cannot challenge the order of reinstatement by establishing a procedural defect of this kind in the underlying order of removal. Habeas review of the reinstatement order would provide no remedy for Martinez because he does not allege any constitutional infirmity in the reinstatement procedure he received. This analysis is consistent with Morales' holding that the only due process claim that an alien who has illegally reentered the country can make is to the reinstatement process itself. If he didn't get notice of the reinstatement or there was some infirmity as applied infirmity to the reinstatement process under the or the reinstatement. Not the original removal order. Not the original removal order. So it clearly helps. As far as Rincon goes, that case involved an expedited removal order. And in that case, the Ninth Circuit, this Court said there's no jurisdiction anywhere over that expedited removal order. And to the extent it discussed gross miscarriage of justice, it was dicta in that case. So we would urge the Court to find that there's no opportunity for a collateral attack. And just one other quick thing with regard to the initial argument about Tilly. We would say that this case was properly transferred up, and the order that's being reviewed here is the reinstatement order. The Petitioner is attacking the reinstatement order by collaterally attacking the underlying order. So this is a collateral attack. And indeed, all the case law in the Ninth Circuit that has the same procedural posture, the Martinez and Rincon cases, which the Petitioner relies on heavily, those cases view this context as a collateral attack. They don't adopt the loan decision out there, an unpublished decision from the Sixth Circuit. So we ask the Court to deny the petition for review. Thank you very much. You have some time on rebuttal. Mr. Vanderhoof. Thank you, Your Honor. The language counsel read about the advice was probably correct at the time. Did you recognize that language? The advice by the judge. Did you recognize that language? Correct. Where did it come from? It came from our brief in 2002, Your Honor. Who wrote it? We did. I did, Your Honor. But it was about judicial review. And the courts have said that the judicial review issue is separate from the habeas issue. And the law was unclear. There were cases going both ways. But this Court had clearly held in Beltone-Leon, it is jurisdiction to consider and in Magana to go into habeas. So this Court did hold that prior to the 1998 hearing. I want to raise two points, three points, actually. On de recon. De recon does hold that morales de esquerdo is no longer good law because it did not consider 1252A2D. That's a holding of this Court that's binding on this panel. A holding of this Court? In de recon is the Ninth Circuit decision, post morales de esquerdo. Is it an en banc decision? It's not. But it was a panel decision. Panels don't overrule the en banc Court. Well, what this Court did decide in that case is because the morales Court did not consider, not that it ruled on and they disagreed with, they did not consider 1252A2D, that the panel of this Court was free to consider that, and they ruled that 1252A2D. So the panel did not say that morales de esquerdo was no longer good law. It said on the issue, it said you can get review of the underlying order. It did not say it's no longer good law. It found a distinction, a meaningful distinction between the issue in that case. I apologize. I apologize. And the issues in morales de esquerdo. It said morales de esquerdo doesn't control this case because it didn't say it's no longer good law. I apologize. Yes, correct, Your Honor. This is what happens. Everybody tries to spin things in their favor, and you get too far afield from what really happened. So de recon, though, controls this case because de recon says that on an illegal reentry after deportation, you review to see whether there was a gross miscarriage of justice. And every circuit that has considered that, the Third, the Fifth, the Tenth, have all agreed, post morales de esquerdo. And the gross miscarriage of justice was in the attorney after the hearing telling him that he didn't have a very good chance or any chance of appeal. Any chance. What he says, you cannot get review. That's a gross miscarriage of justice. He was right at the time on the law, but he didn't foresee the changes that would be made as the DUIs. No, Your Honor. He was wrong on the law. Under Beltran-Leon and Magana, there was review. He told the petitioner that he could not get into federal court, and that was wrong at the time. How do we know that he said this? We have declarations in the record, three declarations, Your Honor, and those are declarations from? The petitioner and his two sisters, all who spoke with Mr. Cardenas. What do you have for Mr. Cardenas? We don't have anything. Have you talked to him? We do have some. Does he agree that he said this? He says he wouldn't have said it. Does he agree that he said that? He has no memory, but he says he wouldn't have said that. So he denies this? He denies it. And if it goes to fact-finding, Your Honor, then we would have to have a fact-finding. Was your client in custody at the time? He was in custody at the time. How long had he been in custody? 29 months.  custody. He did want to get out of custody, Your Honor, but he was told he could not get federal court review. Now, as to the issue of the factual dispute, and we would agree that there is a factual dispute here, and so you could have transfer to the district court or to the immigration judge to review. You've got three declarations. Mr. Cardenas does not remember what occurred, but he says, I wouldn't have said that. The petitioner and his two sisters says he told us that directly, so that would have to be a factual dispute that you review before the district court under 2247, as government agrees, or before the immigration judge. When did these declarations come into existence, the ones with the sisters? In our motion to accept a late appeal at a time because of the ineffectiveness of the counsel, and that's before the court, and they're in the record. So those are all in the record at 146, 148, and 150. I would, just in the last 30 seconds I have, urge the court to consider the Tilley argument and the fact that the Areola panel transferred this, the underlying order, the 1998 order, to the district court, and under the unique circumstances of this case, and the government states that in footnote 6 on page 17 of its brief, under the unique, unusual circumstances of this case, the underlying 1998 order gets directly reviewed now, and under Trinidad Aquino has to be declared not a deportable offense. Thank you very much. All right. The case of Areola v. Holder is submitted.
judges: George, Trott, Bea